SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

OCT - 4 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES OF AMERICA

v.

RICHARD ROBERT CESARIO (01)
JOHN PAUL COOPER (02)
WALTER NEIL SIMMONS (03)
WILLIAM F. ELDER-QUINTANA (04)
JEFFREY EUGENE FULLER (05)
ANDREW JOSEPH BAUMILLER (06)
JEFFRY DOBBS COCKERELL (07)
STEVEN BERNARD KUPER (08)
RAVI MORISETTY (09)
JOE LARRY STRAW (10)
LUIS RAFAEL RIOS (11)
MICHAEL JOHN KISELAK (12)

No. 3:16-CR-060-M

**Supersedes indictment returned
February 18, 2016**

## SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times material to this Superseding Indictment:

### General Allegations

### The TRICARE Program Generally

1.      TRICARE was a health care program of the United States Department of

Defense (DoD) Military Health System that provided coverage for DoD beneficiaries

world-wide, including active duty service members, National Guard and Reserve

members, retirees, their families, and survivors.  Individuals who received health care

benefits through TRICARE were referred to as TRICARE beneficiaries.  The Defense

Health Agency (DHA), an agency of the DoD, was the military entity responsible for overseeing and administering the TRICARE program.

2.      TRICARE was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

3.      TRICARE was a "Federal health care program" as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce, and as that term is used in 42 U.S.C. § 1320a-7b(b).

4.      TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician. Express Scripts, Inc. (Express Scripts) administered TRICARE's prescription drug benefits.

5.      TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy. To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

<u>Compounded Drugs Generally</u>

6.      In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the

supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Compounded drugs are not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. The Texas State Board of Pharmacy regulates the practice of compounding in the State of Texas.

7.      Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. Compounded drugs may also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

<u>Marketing Defendants</u>

8.      **Richard Robert Cesario**, a resident of Plano, Texas, founded, co-owned, and co-operated CCMGRX, LLC (CMGRX), a Texas limited liability company formed in September 2014 that had its principal place of business at 5050 Quorum Drive, Dallas, Texas. **Cesario** served as CMGRX's CEO and Treasurer. The 'CMG' in CMGRX stands for Compound Marketing Group. CMGRX primarily marketed compounded pain and scar creams to current and former members of the U.S. military and their families on behalf of various compounding pharmacies. CMGRX's principle marketing tool was a sham medical study, through which individuals were paid monetary compensation in

exchange for obtaining compounded drugs with their TRICARE prescription benefits. CMGRX ceased operating in mid-2015 shortly after TRICARE announced changes to its coverage of compounded drugs. From October 2014 through June 2015, TRICARE paid more than $102 million for compounded drug prescriptions generated by CMGRX. Prior to forming CMGRX, **Cesario** owned and operated a similar marketing company under the name CMG RX LLC.

9.      **John Paul Cooper**, a resident of Southlake, Texas, co-owned and co-operated CMGRX, and served as its President and Secretary.

10.     **Joe Larry Straw**, a resident of Frisco, Texas, was a marketer for CMGRX. Prior to joining CMGRX, **Straw** owned and operated a marketing company that focused on members of the military. **Straw** introduced CMGRX to his network of marketers, which became one of the primary sources of CMGRX's patient referrals. **Straw** and his network of marketers recruited members of the military and their families and offered them monetary compensation in exchange for obtaining compounded drugs with their TRICARE prescription benefits as part of CMGRX's study.

11.     **Luis Rafael Rios**, a resident of Killeen, Texas, was a marketer and patient recruiter for CMGRX in **Straw's** network. **Rios** recruited hundreds of current and former military members on and around Fort Hood in Killeen, Texas, to use their TRICARE prescription benefits to obtain compounded drugs in exchange for monetary compensation as part of CMGRX's study.

12.     **Michael John Kiselak**, a resident of Southlake, Texas, was a marketer for CMGRX. **Kiselak** led a marketing group within CMGRX that focused on recruiting

members of the military and their families to use their TRICARE prescription benefits to obtain compounded drugs in exchange for monetary compensation as part of CMGRX's study.

Physician Defendants

13.     **Walter Neil Simmons**, a resident of Arizona, served as the Chief Medical Officer of CMGRX.  **Cesario**, **Cooper**, and **Simmons** worked together to create CMGRX's sham medical study for use as a marketing tool for compounded drugs. **Simmons** named the study the "Patient Safety Initiative" or "PSI Study."  The true purpose of the PSI Study was to pay TRICARE beneficiaries to fill prescriptions for compounded drugs through CMGRX's partner pharmacies.  From September 2014 through May 2015, TRICARE paid more than $3 million for compounded drugs prescribed by **Simmons**.

14.     **William F. Elder-Quintana (Elder)**, a resident of El Paso, Texas, was recruited by **Simmons** to work as a contract physician with CMGRX.  **Cesario** and **Cooper** paid **Elder** to prescribe compounded drugs to TRICARE beneficiaries.  Some of the payments were made to **Elder** directly, while others were made to Aztec Medicus, PLLC, a Texas professional limited liability company owned and controlled by **Elder**. **Elder** wrote thousands of prescriptions for compounded drugs to TRICARE beneficiaries who he never met in person, and for whom he conducted only a cursory consultation via telephone.  From October 2014 through June 2016, TRICARE paid more than $96 million for compounded drugs prescribed by **Elder**.

Pharmacy Defendants

15.      **Jeffrey Eugene Fuller**, a resident of Dallas, Texas, owned Trilogy
Pharmacy (Trilogy), a compounding pharmacy in the TRICARE network, located in
Dallas, Texas.  Trilogy paid **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and other CMGRX
employees kickbacks in exchange for sending prescriptions for compounded drugs to
Trilogy.  From September 2014 through June 2015, TRICARE paid Trilogy more than
$51 million for filling prescriptions Trilogy obtained from CMGRX.

16.      **Andrew Joseph Baumiller**, a resident of Dallas, Texas, was the President
of Trilogy Pharmacy.  **Baumiller** worked closely with **Fuller**, **Cesario** and **Cooper** to
disguise the kickbacks paid by Trilogy to **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and
other CMGRX employees.

17.      **Jeffry Dobbs Cockerell**, a resident of Houston, Texas, owned and operated
360 Pharmacy Services (360), a compounding pharmacy in the TRICARE network,
located in Webster, Texas.  360 paid kickbacks to **Cesario** and **Cooper** in exchange for
sending prescriptions to 360.  From December 2014 through May 2015, TRICARE paid
360 more than $39 million for filling prescriptions 360 obtained from CMGRX.

18.      **Steven Bernard Kuper**, a resident of Burleson, Texas, owned and
operated FW Medical Supplies LLC, a compounding pharmacy in the TRICARE
network, located in Burleson, Texas, which did business under the name Dandy Drug
(Dandy).  Dandy paid kickbacks to **Cesario** and **Cooper** in exchange for referring
prescriptions to Dandy.  From February 2015 through April 2015, TRICARE paid Dandy
more than $9 million for filling prescriptions Dandy obtained from CMGRX.

19.    **Ravi Morisetty**, a resident of Irving, Texas, owned and operated Dena Group, LLC, a compounding pharmacy in the TRICARE network, located in Irving, Texas, which did business under the name Alpha Pharmacy (Alpha).  Alpha paid kickbacks to **Cesario** and **Cooper** in exchange for referring prescriptions to Alpha.  From December 2014 through February 2015, TRICARE paid Alpha more than $2 million for filling prescriptions Alpha obtained from CMGRX.

<u>Count One</u>
Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

20.     Paragraphs 1 through 19 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

21.     From on or around May 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Cesario, Cooper, Simmons, Elder, Fuller, Baumiller, Cockerell, Kuper, Morisetty, Straw, Rios**, and **Kiselak** did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, known and unknown to the grand jury, to violate 18 U.S.C. § 1347, that is, to devise and to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, TRICARE, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, TRICARE, in connection with the delivery of, and payment for, health care benefits, items, and services, namely, compounded drugs.

<u>Purpose of the Conspiracy</u>

22.     It was a purpose of the conspiracy for the defendants and their coconspirators to unlawfully enrich themselves through the submission of claims to Express Scripts for compounded drugs prescribed to TRICARE beneficiaries, which prescriptions had been induced by kickbacks paid to the prescribing physicians, by kickbacks paid, or promised to be paid, to TRICARE beneficiaries, and by kickbacks

paid, or promised to be paid to, marketers, and to conceal those facts from DHA, TRICARE, and Express Scripts.

## Manner and Means of the Conspiracy

23.     The manner and means by which the defendants and their coconspirators sought to accomplish the purposes of the conspiracy included, among other things:

## The Scheme to Defraud

24.     The defendants and their coconspirators devised and executed a scheme to defraud TRICARE by making and receiving payments in connection with the prescription of compounded drugs to TRICARE beneficiaries.  These payments included: (a) payments to TRICARE beneficiaries in exchange for filling prescriptions for compounded drugs; (b) payments to physicians in exchange for prescribing compounded drugs to TRICARE beneficiaries; and (c) payments to marketers in exchange for referrals of TRICARE beneficiaries and their prescriptions for compounded drugs.

## Payment of Kickbacks to TRICARE Beneficiaries

25.     As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and their coconspirators offered to pay, and did pay, TRICARE beneficiaries for obtaining and filling prescriptions for compounded drugs, principally compounded pain creams, scar creams, migraine creams, and vitamins. **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and their coconspirators offered to pay TRICARE beneficiaries $250 per month for each prescription they obtained through one of CMGRX's partner pharmacies.

26.  **Cesario, Cooper, Simmons, Straw, Rios, Kiselak,** and their coconspirators disguised these payments to TRICARE beneficiaries by calling them "grants" for participating in a sham medical study that they referred to as the "Patient Safety Initiative" or "PSI Study." The defendants and their coconspirators falsely represented that the study was approved by TRICARE and that it was designed to evaluate the safety and efficacy of compounded drugs. In reality, the PSI Study was not approved by TRICARE, was not overseen by a qualified physician, epidemiologist, or other medical professional, had no control group, and was not designed to gather any useful scientific data relating to the safety or efficacy of any drug.

27.  **Cesario, Cooper,** and their coconspirators used the PSI Study to compile a list of TRICARE beneficiaries who had filled prescriptions so that they could calculate how much to pay the beneficiaries. To gather this data, **Cesario, Cooper, Straw, Rios, Kiselak,** and their coconspirators instructed TRICARE beneficiaries to log-in to a website once per month, complete a short PSI Study questionnaire or assessment for each prescription they received that month, and upload a picture of each of their prescribed compounded drugs. Most of the questions in the questionnaire centered on the ordering, packaging, and delivery of the drugs. Using the information obtained from the PSI Study questionnaires, **Cesario, Cooper,** and their coconspirators compiled monthly "payout" lists, consisting of individuals, addresses, and payment amounts.

28.  To disguise the source of the payments to the TRICARE beneficiaries, **Cesario** and **Cooper** directed the creation of a charity and funneled the payments to the beneficiaries through the charity. **Kiselak** introduced **Cesario** and **Cooper** to J.K., who

helped **Cesario** and **Cooper** create the Freedom From Pain Foundation, a Delaware Corporation, registered it as a § 501(c)(3) tax-exempt charitable organization, and who served as its president. The Freedom From Pain Foundation was funded entirely by payments from **Cesario** and **Cooper**, or business accounts controlled by **Cesario** and **Cooper**, and they directed and controlled its actions. **Cesario** and **Cooper** falsely represented to others that the Freedom From Pain Foundation operated independently and at arms-length from CMGRX, and took actions to disguise the nature of their direction and control of it.

29.     For example, **Cesario**, **Cooper**, and their coconspirators gave the monthly payout lists to the Freedom From Pain Foundation, and **Cesario** and **Cooper** instructed the Freedom From Pain Foundation to write checks to the TRICARE beneficiaries in amounts indicated on the payout lists. **Cesario** and **Cooper** shared these expenses equally, each writing a check to Freedom From Pain Foundation for approximately one-half of the total from each payout list. **Cesario** and **Cooper** wrote "Donation," "Donations," "Donation For Charity," and "Donation-Charity" in the memo section of certain checks to the Freedom From Pain Foundation.

30.     While **Cesario**, **Cooper**, and J.K. were in the process of setting up the Freedom From Pain Foundation, **Cesario** and **Cooper** funneled payments to TRICARE beneficiaries through the Narragansett Group, Inc., a business controlled by J.K.

31.     From November 2014 to June 2015, **Cesario** and **Cooper** paid approximately $2.8 million to the Freedom From Pain Foundation and the Narragansett Group, the majority of which was used to pay doctors and TRICARE beneficiaries.

### Payment of Kickbacks to Prescribing Physicians

32.      As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Cesario**, **Cooper**, **Simmons**, and their coconspirators offered to pay, and did pay, **Elder** and other physicians to write prescriptions for compounded drugs. Physicians were typically paid $60 for each compounded pain or scar cream prescription they wrote and $30 for each compounded vitamin prescription they wrote. The prescribing physicians typically had no prior physician/patient relationship with the TRICARE beneficiaries for whom they wrote prescriptions, and wrote the prescriptions after cursory telephone interviews with the patients.

33.      In an effort to disguise their payments to prescribing physicians, **Cesario**, **Cooper**, and their coconspirators funneled some of these payments through the Freedom From Pain Foundation under the false premise that the physicians were providing consulting services in connection with the PSI Study.

34.      As part of the scheme to defraud, **Cesario** and **Cooper** employed individuals, who had no medical or pharmaceutical training or licenses, as "pharmacy technicians" in CMGRX's medical department. These unlicensed technicians received patient referrals from CMGRX marketers in the field. **Cesario** and **Cooper** directed these individuals to use the information provided by the marketers to fill out prescriptions for compounded medications and then contact Express Scripts to determine whether the formulations would be covered, and if so, how much TRICARE would pay for each prescription. Based on Express Scripts' response, these untrained and unlicensed individuals would adjust the formulation of the prescription and re-contact Express

Scripts to see if it would pay more, all in an effort to maximize the amount TRICARE would pay, and without any regard for the medical necessity for the prescription.

35.     Once the highest-paying formulation for the prescription had been determined, CMGRX employees would send the patient's information and a pre-filled prescription form to **Elder**.  On some occasions, **Elder** contacted the patient by telephone, conducted a cursory medical evaluation, signed the prescription, and returned it to CMGRX.  TRICARE beneficiaries complained to CMGRX employees that **Elder's** telephone calls lasted less than two minutes.  On other occasions, **Cesario**, **Cooper**, and their coconspirators skipped this step and used a signature stamp provided by **Elder** to complete the prescription, especially for renewal prescriptions after a beneficiary's refills had been exhausted.

36.     As part of the scheme to defraud, CMGRX employees called TRICARE beneficiaries and falsely represented that they were from **Elder's** medical or clinical staff to obtain the beneficiary's approval to authorize as many as five additional months of refills, and without regard for the medical necessity of the prescription.

37.     As part of the scheme to defraud, **Elder** wrote prescriptions for TRICARE beneficiaries who resided in states where he was not licensed to practice medicine.

38.     As part of the scheme to defraud, **Elder** wrote prescriptions for compounded drugs that contained a controlled substance without performing an in-person evaluation of the patient.

39.     As part of the scheme to defraud, **Cesario** and **Cooper** directed **Elder** to return the signed prescriptions to CMGRX instead of giving them to the patients directly,

which allowed **Cesario** and **Cooper** to choose which compounding pharmacy would fill each prescription—a choice that was not allotted to the patients. This determination was made based on the pharmacies' then-current capacity, and which pharmacy would pay **Cesario** and **Cooper** the most money for the referrals.

<u>Payment of Kickbacks by Compounding Pharmacies</u>

40.     As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Fuller** and **Baumiller** agreed to pay **Cesario**, **Cooper**, **Straw**, **Rios** **Kiselak**, and other CMGRX employees, a percentage of the gross revenue received by Trilogy for claims submitted to TRICARE for prescriptions generated by CMGRX.  In an attempt to disguise the nature of some of these payments, **Fuller** and **Baumiller** agreed to make, and **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and other CMGRX employees, agreed to receive, payments as employee wages.  However, **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and other CMGRX employees were not bona fide employees of Trilogy.

41.     As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Cockerell** agreed to pay **Cesario** and **Cooper** a percentage of the gross revenue received by 360 for claims submitted to TRICARE for prescriptions generated by CMGRX.  In an attempt to disguise the nature of these payments, **Cockerell** agreed to make, and **Cesario** and **Cooper** agreed to receive, these payments as employee wages. However, **Cesario** and **Cooper** were not bona fide employees of 360.

42.     **Kiselak** introduced **Cesario** and **Cooper** to **Cockerell** and requested that **Cesario** and **Cooper** pay him a percentage of all business that they ran through 360.

43.     As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Kuper** agreed to pay **Cesario** and **Cooper** a percentage of the gross revenue received by Dandy for claims submitted to TRICARE for prescriptions generated by CMGRX.  In an attempt to disguise the nature of these payments, **Kuper** agreed to make, and **Cesario** and **Cooper** agreed to receive, these payments as employee wages. However, **Cesario** and **Cooper** were not bona fide employees of Dandy.

44.     As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Morisetty** agreed to pay CMGRX a percentage of the gross revenue received by Alpha for claims submitted to TRICARE for prescriptions generated by CMGRX.  In an attempt to disguise one such payment, Alpha transferred $400,000.00 by wire to JRCRX II, LLC, an entity owned and controlled by **Cesario** and **Cooper**.

45.     **Fuller**, **Baumiller**, **Cockerell**, **Kuper**, and **Morisetty** knew that **Cesario** and **Cooper** were paying kickbacks to TRICARE beneficiaries through the PSI Study.

Effect on TRICARE

46.     Had DHA, TRICARE, and Express Scripts been aware that payments were being made to doctors, beneficiaries, marketers, and other individuals involved in the submission of claims for reimbursement for compounded drugs as set forth above, the claims would have been denied and not paid.

47.     The defendants and the coconspirators caused TRICARE to suffer an actual loss of more than $100 million.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

Counts Two through Eleven
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remunerations
(Violations of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2)

48.     Paragraphs 1 through 47 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

49.     From on or around May 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, defendants, **Fuller**, **Baumiller**, **Cockerell**, **Kuper**, and **Morisetty**, aided and abetted by others, and aiding and abetting others, known and unknown to the Grand Jury, did knowingly and willfully offer to pay and did pay remuneration directly and indirectly, overtly and covertly, in cash and in kind to **Cesario**, **Cooper**, **Straw**, **Rios**, **Kiselak**, and others, to induce them to refer individuals to a compounding pharmacy for the furnishing and arranging for the furnishing of prescription compounded drugs, payment for which was made in whole and in part under a Federal health care program, namely, TRICARE, each payment forming a separate count:

| Count | Defendant(s) | Recipient(s) | Date of Payment | Amount of Payment |
|-------|--------------|--------------|-----------------|-------------------|
| 2 | Cockerell | Cesario | 05/04/2015 | $1,414,691.11 |
| 3 | Cockerell | Cooper | 05/04/2015 | $1,414,691.11 |
| 4 | Kuper | Cesario | 04/08/2015 | $623,883.00 |
| 5 | Kuper | Cooper | 04/08/2015 | $623,883.00 |
| 6 | Fuller and Baumiller | Cesario | 05/08/2015 | $353,528.72 |
| 7 | Fuller and Baumiller | Cooper | 05/08/2015 | $353,528.72 |
| 8 | Fuller and Baumiller | Straw | 03/20/2015 | $68,980.39 |
| 9 | Fuller and Baumiller | Rios | 03/26/2015 | $40,628.01 |
| 10 | Fuller and Baumiller | Kiselak | 03/26/2015 | $15,304.01 |
| 11 | Morisetty | Cesario and Cooper | 02/12/2015 | $400,000.00 |

All in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

**Superseding Indictment – Page 16**

<u>Counts Twelve through Twenty-One</u>
Receipt of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(1))

50.    Paragraphs 1 through 49 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

51.    From on or around May 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, defendants **Cesario**, **Cooper**, **Straw**, **Rios**, and **Kiselak** did knowingly and willfully solicit and receive remuneration directly and indirectly, overtly and covertly, in cash and in kind from compounding pharmacies in return for referring individuals to the pharmacy for the furnishing and arranging for the furnishing of prescription compounded drugs, for which payment was made in whole and in part under a Federal health care program, namely, TRICARE, each payment forming a separate count:

| Count | Defendant(s) | Pharmacy | Date of Payment | Amount of Payment |
|-------|--------------|----------|-----------------|-------------------|
| 12 | Cesario | 360 | 05/04/2015 | $1,414,691.11 |
| 13 | Cooper | 360 | 05/04/2015 | $1,414,691.11 |
| 14 | Cesario | Dandy | 04/06/2015 | $623,883.00 |
| 15 | Cooper | Dandy | 04/08/2015 | $623,883.00 |
| 16 | Cesario | Trilogy | 05/08/2015 | $353,528.72 |
| 17 | Cooper | Trilogy | 05/08/2015 | $353,528.72 |
| 18 | Cesario and Cooper | Alpha | 02/12/2015 | $400,000.00 |
| 19 | Straw | Trilogy | 03/20/2015 | $68,980.39 |
| 20 | Rios | Trilogy | 03/26/2015 | $40,628.01 |
| 21 | Kiselak | Trilogy | 03/26/2015 | $15,304.01 |

All in violation of 42 U.S.C. § 1320a-7b(b)(1).

Counts Twenty-Two through Twenty-Five
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.)

52.     Paragraphs 1 through 51 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

53.     From on or around October 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, **Cesario** and **Cooper**, aided and abetted by others, and aiding and abetting others, known and unknown to the Grand Jury, did knowingly and willfully offer to pay and did pay remuneration directly and indirectly, overtly and covertly, in cash and in kind to **Elder** to induce him to order, and arrange for and recommend purchasing, and ordering prescription compounded drugs, services and items for which payment was made in whole and in part under a Federal health care program, namely, TRICARE, each payment forming separate count:

| Count | Defendants | Date of Payment | Amount of Payment |
|---|---|---|---|
| 22 | Cesario and Cooper | 03/24/2015 | $64,340.00 |
| 23 | Cesario and Cooper | 04/13/2015 | $28,050.00 |
| 24 | Cesario and Cooper | 04/28/2015 | $35,770.00 |
| 25 | Cesario and Cooper | 05/12/2015 | $72,685.00 |

All in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

Counts Twenty-Six through Twenty-Nine
Receipt of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(1))

54.     Paragraphs 1 through 53 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

55.     From on or around October 2014, through on or around June 2015, in the Dallas Division of the Northern District of Texas and elsewhere, defendant **Elder** did knowingly and willfully solicit and receive remuneration directly and indirectly, overtly and covertly, in cash and in kind, in return for ordering, and arranging for and recommending purchasing, compounded drugs, payment for which may be made in whole and in part under a Federal health care program namely, TRICARE, each payment forming separate count:

| Count | Defendant | Date of Payment | Amount of Payment |
|-------|-----------|-----------------|-------------------|
| 26 | Elder | 03/24/2015 | $64,340.00 |
| 27 | Elder | 04/13/2015 | $28,050.00 |
| 28 | Elder | 04/28/2015 | $35,770.00 |
| 29 | Elder | 05/12/2015 | $72,685.00 |

All in violation of 42 U.S.C. § 1320a-7b(b)(1).

Counts Thirty through Thirty-Five
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2)

56.    Paragraphs 1 through 55 of this Superseding Indictment are realleged and

incorporated by reference as though fully set forth herein.

57.    From on or around July 2014, through on or around February 18, 2016, in

the Dallas Division of the Northern District of Texas and elsewhere, defendants **Cesario**

and **Cooper**, aided and abetted by others, and aiding and abetting others, known and

unknown to the Grand Jury, did knowingly and willfully offer to pay and did pay

remuneration directly and indirectly, overtly and covertly, in cash and in kind to

TRICARE beneficiaries to induce them to purchase and order prescription compounded

drugs, payment for which was made in whole and in part under a Federal health care

program, namely, TRICARE, each payment forming a separate count:

| Count | Recipient Beneficiary | Date of Payment | Check Number | Amount of Payment |
|-------|-----------------------|-----------------|--------------|-------------------|
| 30 | D.W. | 11/20/2014 | 3708 | $500.00 |
| 31 | D.R. | 12/09/2014 | 3792 | $250.00 |
| 32 | C.J. | 04/15/2015 | 3114 | $750.00 |
| 33 | N.R. | 04/16/2015 | 3270 | $500.00 |
| 34 | J.A. | 04/30/2015 | 3447 | $750.00 |
| 35 | S.W. | 05/01/2015 | 3918 | $750.00 |

All in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

Forfeiture Notice
(18 U.S.C. § 982(a)(7))

58.     Upon conviction of any offense alleged in this Superseding Indictment, and

pursuant to 18 U.S.C. § 982(a)(7), **Cesario**, **Cooper**, **Simmons**, **Elder**, **Fuller**,

**Baumiller**, **Cockerell**, **Kuper**, **Morisetty**, **Straw**, **Rios**, and **Kiselak** shall forfeit to the

United States any property, real or personal, constituting or derived from, directly or

indirectly, the gross proceeds traceable to the commission of the offense including:

Real Property

1)      3305 Snidow Court, Plano, Texas;

2)      4601 Biltmoore Drive, Frisco, Texas;

3)      1311 Hat Creek Trail, Southlake, Texas;

4)      700 Garden Court, Southlake, Texas;

5)      12865 Cannington Cove Terrace, Jacksonville, Florida;

6)      4236 Glenwood Avenue, Dallas, Texas;

7)      4143 Buena Vista, Unit E, Dallas, Texas;

8)      543 Vista Del Rio, New Braunfels, Texas;

9)      Commercial property located at 2253, 2259, and 2263 Valdina Street, Dallas, Texas;

10)     Casa de Serenidad, folio real #5-54841-00 located in Distrito 8 – Cabo Velas, Canton de Santa Cruz, Provincia de Guanacaste, Costa Rica, owned by John Cooper;

11)     Condominium Residencial Oceanica #831 located at Condominio Vertical Residencies Oceanicas, Flamingo, Guanacaste, Costa Rica, owned by Richard Cesario;

Vehicles

12)  2006 Ferrari 43S, vehicle identification number (VIN)
ZFFEW59AX60146316, black, registered to John Paul Cooper, 700 Garden
Court, Southlake, Texas 76092, with Texas license plate FHX4485;

13)  2012 Maserati QSS, VIN ZAM39JKA6C0065580, black, registered to John
P. Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas
license plate FKF0241;

14)  2011 Aston Martin, VIN SCFHDDAJXBAF01128, black, registered to
John P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas
license plate CMGRX;

15)  2014 Chevrolet Corvette, VIN 1G1YK3D70E5128148, yellow, registered
to Richard Robert Cesario and Diana Gold Cesario, 3305 Snidow Court,
Plano, Texas 75025, with Texas license plate FVP2276;

16)  2012 Mercedes-Benz Convertible, VIN WDDKK5KF4CF140951,
red/almond, registered to Diana G. Cesario, 3305 Snidow Court, Plano,
Texas 75025, with Texas license plate FSL9734;

17)  2008 Mercedes Benz S5F, VIN WDDNG71X08A225634, registered to
Kathleen Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with
Texas license plate DVX6287;

18)  2004 Mercedes-Benz SL, VIN WDBSK75FX4F071006, silver, registered
to Richard Cesario, 6700 Creekside Lane, Plano, Texas 75023, with Texas
license plate FKD6784;

19)  2011 Jaguar Convertible, VIN SAJWA4GB1BLB44314, black, registered to
Diana G. Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas
license plate DIVAMOM;

20)  2008 Porsche 911, VIN WP0CD29918S788270, black, registered to John
P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license
plate FNN9966;

21)  2006 Freightliner Pick up, VIN 1FVAFCDK76HW89341, yellow,
registered to John P. Cooper, 700 Garden Court, Southlake, Texas 76092,
with Texas license plate P2XL;

22)  2006 Hummer H1, VIN 137ZA8437WE178798, gray, registered to John Paul Cooper at 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate H1ALPHA;

23)  2003 Hummer H2, VIN 5GRGN23U33H136556, owned by John Cooper;

24)  2003 Hummer H2, unknown VIN, located in Costa Rica, owned by Richard Cesario;

25)  2016 Cadillac Escalade, VIN 1GYS3KKJ8GR125314, black, registered to John Paul Cooper and Erin Leigh Chylinski, 12865 Cannington Cove Terrace, Jacksonville, Florida, with Florida license plate ESYS24;

26)  2009 Cadillac Escalade, VIN 1GYFK26259R194472, black, registered to John Paul Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate BCB6601;

27)  2008 Infiniti QX56, VIN 5N3AA08D38N913863, white, registered to Richard Cesario, 6700 Creekside Lane, Plano, Texas 75023, with Texas license plate FDG6076;

28)  1965 Ford Mustang Fastback, VIN 5F091665097, owned by Richard Cesario;

29)  1967 Mustang GT Fastback Custom, VIN 7T02C191773, owned by Richard Cesario;

30)  1969 Chevrolet Camaro, VIN 124379N659425, orange, owned by Richard Cesario;

31)  1972 Ford Mustang Mach 1 Coupe, Door VIN 2F05H133253, Body VIN 2F05H236726, owned by Richard Cesario;

32)  1979 Pontiac Trans Am, VIN ZW87K9L199041, owned by Richard Cesario;

33)  2015 GMC Yukon, VIN 1GKS2CKJ3FR624877, iridium metallic, registered to Diana G. Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate GJC1726;

34)  2011 GMC Sierra, VIN 1GT125CG7BF264305, white, registered to Richard Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate HINMTY;

35) 2010 Toyota Sequoia Platinum, VIN 5TDDY5G1XAS037786, owned by John Cooper;

36) 2007 Jeep Wrangler, VIN 1J4GA39197L201522, blue, registered to Richard Cesario, 6700 Creekside Lane, Plano, Texas 75023, with Texas license plate FLL1842;

37) 2002 Ford Thunderbird, VIN 1FAHP60A52Y113124, yellow, registered to Diana Gold Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate TWETEE;

38) 2001 Ford Excursion, VIN 1FMSU41F51ED10121, orange, registered to John P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license plate PINKYS1;

39) 2015 BMW M4, VIN WBS3U9C5XFP967334, Texas license plate FSK5371, registered to Jeffrey E. Fuller, 3824 Cedar Springs Road, Dallas, Texas 75219;

40) 2014 BMW 3 Series, VIN WBA3B1G58ENS81082, Texas license plate DST5009, registered to Jeffrey E. Fuller, 3824 Cedar Springs Road, Dallas, Texas;

41) 2015 Porsche Panamera, VIN WP0AB2A75FL050809, Texas license plate FLK7902, registered to Jeffrey E. Fuller, 3824 Cedar Springs Road, Dallas, Texas 75219;

42) 2015 Mercedes Benz ML4, VIN 4JGDA5GB5FA503699, Texas license plate FSS8066, registered to Dena Jo Cockerell;

43) 2014 Audi A8, VIN WAURMAFD3EN000819, Texas license plate DYL3467, registered to Tri-City Group, Inc.;

Boats and Recreational Vehicles

44) 2009 Charger Playcraft 260 SXI Boat, Hull number RDA12001H809 and Trailer, white/red, registered to Richard R. Cesario, 3305 Snidow Court, Plano, Texas 75025;

45) Doral Monticello Boat with trailer, Hull number CA-QJAA511K405, owned by John Cooper;

46) 2002 38' Fleetwood Southwind Motorhome, VIN 1FCNF53S710A18284, registered to Diana L. Gold Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate 359089D;

47) 1998 Calumet Coach MMS, VIN 44KFB6284WWZ18697, expired registration in the name of Philip S. Morton Family Dentistry PLLC, in Van Buren, Arkansas, with Arkansas license plate B298378;

48) 2015 Ningbo Dongfang Lingyun Dune Buggy, VIN LXDACLAC1E1800541, owned by John Cooper;

49) 2015 Ningbo Dongfang Lingyun Dune Buggy, VIN LXDACLAC3E1900754, owned by John Cooper;

50) 2015 Ningbo Dongfang Lingyun Dune Buggy, VIN LXDACLAC0E1900730, owned by John Cooper;

51) Aluma Utility Trailer, VIN 1YGHD2026FB124549, owned by John Cooper;

Bank Accounts

52) Funds in the amount of $966,214.10 from Bank of Texas Diamond Advantage account XXXXXX5526, titled The John Paul Cooper Descendants Trust, 700 Garden Court, Southlake, Texas 76092, opened 3/31/2015 with John Cooper as the only authorized signer;

53) Funds in the amount of $477,846.56 from Bank of Texas Diamond Advantage account XXXXXX5537, titled Richard Robert Cesario, 3305 Snidow Court, Plano, Texas 75025, opened 03/31/2015 by Richard Robert Cesario;

54) Funds in the amount of $331,507. 49 from Wells Fargo (WF) Platinum Savings account number XXXXXX3508, titled John Paul Cooper Exempt Lifetime Trust, 700 Garden Court, Southlake, Texas 76092, opened 5/12/2015 by John P Cooper;

55) Funds in the amount of $133,641.45 from JP Morgan Chase (JPMC) Plus Savings account number XXXXXX4008, titled John Paul Cooper Exempt Lifetime Trust, 1311 Hat Creek Trail, Southlake, Texas 76092, opened 02/20/2013 by John P. Cooper;

56) Funds in the amount of $40,599.59 from JPMC Premier Platinum checking account XXXXX5899, titled Richard R. Cesario, POD Diana Gold Cesario,

6700 Creekside Lane, Plano, Texas 75023, opened 03/13/2015 by Richard R. Cesario;

57)   Funds in the amount of $31,086.68 from Ameris Bank account XXXXXX4329, titled John Cooper, 12865 Cannington Cove Terrace, Jacksonville, Florida 32258, opened in October 2015 by John Cooper;

58)   Funds in the amount of $16,789.59 from WF Account XXXXXX6432, solely owned by Richard R. Cesario, opened October 19, 2010;

59)   Funds in the amount of $11,858.16 from Comerica Bank account XXXXXX4701, titled CCMS Payment Services LLC, and/or Fifth Manhattan, opened by John Paul Cooper and/or Richard R. Cesario;

60)   Funds in the amount of $9,990.10 from JPMC Private Client savings account XXXXXX1061, titled Richard R. Cesario POD Diana Gold Cesario, 6700 Creekside Lane, Plano, Texas 75023, opened 01/14/2015 by Richard R. Cesario;

61)   Funds in the amount of $8,741.78 from JPMC Business Select Checking Account number XXXXX8180, titled Cooper WCTB LLC, 1311 Hat Creek Trail, Southlake, Texas 76092, opened 01/15/2013 by John Paul Cooper;

62)   Funds in the amount of $4,666.01 from Bank of Texas Business Advantage account XXXXXX4632 titled JRCRX V LLC, 5050 Quorum Drive, Suite 700, Dallas, Texas 75254, opened 04/11/2015 by Richard Cesario and John Paul Cooper;

63)   Funds in the amount of $673.72 from JPMC Total Business Checking Account number XXXXX6806, titled JRCRX II, LLC, 5050 Quorum Drive, Suite 700, Dallas, Texas 75254, opened 02/06/2015 by John Paul Cooper and Richard Cesario;

64)   Funds in the amount of $564.53 from a JPMC Premier Checking Account, number XXXXX4145, titled John Paul Cooper and Kathleen D Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, opened 08/09/2007 by John Paul Cooper and Kathleen D Cooper, with (JTWROS);

65)   Funds in the amount of $126.93 from Comerica account XXXXXX5750, titled CCMS Payment Services LLC, and/or Fifth Manhattan, opened by John Paul Cooper and/or Richard R. Cesario;

66) Funds in the amount of $116.31 from JPMC Business Checking account number XXXXX5300, titled MBR Empire, LLC, 6700 Creekside Lane, Plano, Texas 75023, opened 01/14/2015 by Richard R. Cesario;

67) Funds in the amount of $23.02 from Bank of Texas Free Small Business Checking account number XXXXXX0279, titled Freedom From Pain Foundation, 401 N. Carroll Ave., Suite 163, Southlake, Texas 76092, opened 01/29/2015 by Joseph R. King, Thomas C. Kormondy and Jeffrey L. Miller;

68) All funds from Savings account 001-1712387-9 at Banco de Costa Rica, in the name of Seahawk Thirty One Sociedad Anonima, identification number 3101509004;

69) All funds from Savings account 001-972583-0 at Banco de Costa Rica in the name of John Paul Cooper;

70) All funds from Savings account 001-1730082-7 at Banco de Costa Rica in the name of RDC Golden Parachute, LLC;

71) All funds from Savings account 001-1712388-7 at Banco de Costa Rica in the name of John Paul Cooper Exempt Lifetime Trust;

72) All funds in JPMC Business Checking Account number XXXXX0308, titled Trilogy Pharmacy, Inc, opened 09/02/2014 by Jeffrey E. Fuller and Andrew J. Baumiller;

73) All funds in JPMC Business Checking Account number XXXXX3196, titled Trilogy Diagnostics, LLC, opened 01/15/2015 by Jeffrey E. Fuller and Andrew J. Baumiller;

74) All funds in JPMC Business Checking Account number XXXXX1539, titled SmartCCM, LLC, opened 05/15/2015 by Jeffrey E. Fuller and Andrew J. Baumiller;

75) All funds in JPMC Checking Account number XXXXX6345, titled Jeffrey E. Fuller, opened 02/01/2005 by Jeffrey E. Fuller;

76) Up to $800,000 in JPMC Business Checking Account number XXXXX9189, titled Fulmar Global LLC, opened 01/14/2016 by Jeffrey E. Fuller and Michael R. Martinez;

77)   All funds in JPMC Checking Account number XXXXX2721, titled Trilogy Pharmacy, Inc., opened 04/14/2015 by Jeffrey E. Fuller, Melissa Berasaluce and Andrew J. Baumiller;

78)   Up to $900,000 in JPMC Business Checking Account number XXXXX8198, titled Parkosta, Inc., opened 03/26/2015 by Jeffrey E. Fuller and Charles D. Parks;

79)   All funds in JPMC Business Class Checking Account XXXXX4549, titled Trilogy Pharmacy, Inc, opened 02/12/2010 by Andrew J. Baumiller and Jeffrey E. Fuller;

80)   All funds in JPMC high yield savings account XXXXXX9370, titled Trilogy Pharmacy, Inc., opened 04/17/2014 by Jeffrey E. Fuller and Andrew J. Baumiller;

81)   All funds in JPMC Business Checking Account number XXXXX2232, titled 360 Pharmacy Services, LLC., opened 12/16/2013 by Jeff Cockerell;

82)   All funds in JPMC Business Checking Account number XXXXX2097, titled 360 Pharmacy Services, LLC., opened 03/04/2015 by Jeff Cockerell;

83)   All funds in JPMC Checking Account number XXXXXX2708, titled Jeffry D. Cockerell, opened 07/26/2006 by Jeff Cockerell;

84)   Up to $80,000 in JPMC Checking Account number XXXXX6196, titled Cockerell Management LTD LLP, opened 03/08/2010 by Jeffry Cockerell and TX CMGP, LLP;

85)   Up to $82,500 from JPMC Business Checking Account number XXXXX7977, titled Elevate Seniors, LLC, opened 11/19/2014 by Walter Simmons;

86)   Up to $138,110 from WestStar Bank Checking account XXXX1391, titled William F. Elder and Heather A. Ferreri-Elder, opened prior to January 2014;

87)   Up to $185,445 from WestStar Bank account XXX7937, titled Aztec Medicus PLLC, opened 03/06/2015 by William F. Elder;

88)   Up to $1,800,000 in Bank of America (BOA) account XXXXXXXX4651, titled Smart Rx Inc., opened 12/10/2013 by Joe Straw;

89) Up to $645,000 in BOA account XXXXXXXX8555, titled Tri-City Group, dba PSI4U, opened 10/08/2014 by Joe Straw;

90) Up to $317,580 in BOA account XXXXXXXX3642, titled Luis Rios, opened 04/14/2014 by Luis Rios;

Cash

91) Cash in the amount of $110,000 seized from Ameris Bank safety deposit box 226, 12689 San Jose Boulevard, Jacksonville, Florida, in the name of John Cooper;

92) Cash in the amount of $17,300 seized on February 23, 2016, from 12865 Cannington Cove Terrace, Jacksonville, Florida;

93) Cash in the amount of $3,900 seized on February 23, 2016, from 3305 Snidow Court, Plano, Texas;

94) Cash in the amount of $2,505 seized on February 23, 2016, from 700 Garden Court, Southlake, Texas;

95) Cash in the amount of $1,500 seized on February 23, 2016, from 2006 Freightliner Pick up, VIN 1FVAFCDK76HW89341, yellow, registered to John P. Cooper, 700 Garden Court, Southlake, Texas;

96) Cash located at Casa de Serenidad, folio real #5-54841-00 located in Distrito 8 – Cabo Velas, Canton de Santa Cruz, Provincia de Guanacaste, Costa Rica, owned by John Cooper;

97) Cash located at Condominium Residencial Oceanica #831 located at Condominio Vertical Residencies Oceanicas, Flamingo, Guanacaste, Costa Rica, owned by Richard Cesario;

Investment Accounts

98) Funds in the amount of $576,670.63 from JPMC Managed Investment account XXXXX3004, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

99) Funds in the amount of $265,315.41 from JPMC Managed Investment account XXXXX1008, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

100) Funds in the amount of $250,385.72 from JPMC Managed Investment account XXXXX6003, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

101) Funds in the amount of $207,951.43 from JPMC Managed Investment account XXXX26004, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

102) Funds in the amount of $198,709.62 from JPMC Managed Investment account XXXXX9007, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

103) Funds in the amount of $77,422.78 from JPMC Managed Investment account XXXXX1003, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

104) Funds in the amount of $64,196.20 from JPMC Managed Investment account XXXXX5008, titled John P. Cooper Exempt Lifetime TR, John P. Cooper Trustee;

105) Funds in the amount of $978.36 in dividends from JPMC Managed Investment accounts XXXXX3004, XXXXX9007, XXXXX1003, and XXXXX5008;

106) Funds in the amount of $332,318.03 from JPMC Managed Investment account XXXXX1009, titled Richard R. Cesario;

107) Funds in the amount of $306,763.88 from JPMC Managed Investment account XXXX8403, titled Richard R. Cesario;

108) Funds in the amount of $200,985.86 from JPMC Managed Investment account XXXX96004, titled Richard R. Cesario;

109) Funds in the amount of $197,339.28 from JPMC Managed Investment account XXXXX9008, titled Richard R. Cesario;

110) Funds in the amount of $156,904.59 from JPMC Managed Investment account XXXXX7002, titled Richard R. Cesario;

111) Funds in the amount of $851.06 in dividends from JPMC Managed Investment accounts XXXXX1009; XXXX96004; XXXXX9008; and XXXXX7002;

112) All funds in JPMC Managed Investment Account number XXXXX3005, titled Trilogy Pharmacy Inc., opened 08/22/2014 by Jeffrey Fuller;

113) All funds in JPMC Managed Investment Account number XXXXX0007, opened in May 2015 by Jeffrey E. Fuller;

114) All funds in JPMC Managed Investment Account number XXXXX1005, opened 05/14/2015 by Jeffrey E. Fuller;

115) All funds in JPMC Managed Investment Account number XXXXX6004, opened 05/14/2015 by Jeffrey E. Fuller;

116) Up to $2,010,000 in Charles Schwab investment account 1596-4005 owned by Jeffry Cockerell;

Firearms, Jewelry, and Other Property

117) Firearms and related accessories owned by Cooper seized from 700 Garden Court, Southlake, Texas, February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-003951:

   a) U.S.A. Military Surplus Rifle (Springfield Armory Rifle), SN 2060069

   b) Remington Shotgun, SN 566167

   c) Thompson Center Arms Muzzle Loader Rifle, SN K76884

   d) Remington Rifle with Weaver Scope, SN 752520

   e) Winchester Rifle with Bushnell Sportview Scope, SN G1799611

   f) Remington Rifle, SN 063495B

   g) Winchester Shotgun, 1025816

   h) Savage Anschutz Rifle with Weatherby Mark XXII Scope, SN 912152A

   i) Anschutz Rifle, SN 1056876A

   j) Barrett Rifle with two magazines, Leupold Mark 4 Scope, Pelican Case, SN AA003181

   k) Noveske Rifle, SN NI9513

l) Enfield Bolt Action Rifle with magazine and bayonet, SN UF55 AI9262

m) Enfield Bolt Action Rifle with magazine, SN UF55 AI9784

118) Firearms and related accessories owned by Cooper seized from 2006 Freightliner Pick up, VIN 1FVAFCDK76HW89341, February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-002918:

   a) North American Arms guardian .32 caliber pistol, SN AB3429

   b) Colt M1911Al, U.S. Army issue, SN 844154

   c) Smith & Wesson .22 caliber long rifle revolver, SN CHT1785

   d) Ruger SP101, .357 magnum revolver, SN 573-36739

   e) Smith & Wesson, .357 magnum revolver, SN CJV8977

   f) Smith & Wesson, 9mm Parabellum revolver, SN BKY9592

119) Firearms and related accessories owned by Cesario seized from 3305 Snidow Court, Plano, Texas, February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-003016:

   a) Para 1911045 caliber pistol, SN P180892

   b) Smith & Wesson Desert Eagle .40 caliber pistol, SN 33313981

   c) Remington Arms Model 17 shotgun, SN 25277

   d) Marlin model 60 .22 caliber rifle, SN 16445023

   e) BFI model BACR collapsing stock rifle, SN ACR00035B

   f) Rossi Braztech .223 rifle with ATN 4 12x60 scope, SN AS045138

   g) Legion USA Izhmash shotgun, SN H11410194

   h) Savage Arms 24S-E shotgun, SN not visible

   i) Mossberg Model 1000 shotgun, SN FD07373

   j) Glock model 27 pistol, SN CBH873US

                    k)  Para model 1911 .45 caliber pistol, SN K022388

                    l)  Smith & Wesson model 19-6 handgun, SN BBM9945

120)    Jewelry owned by Cooper seized from 700 Garden Court, Southlake, Texas, on February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-003220;

121)    Jewelry owned by Cooper seized from 12865 Cannington Cove Terrace, Jacksonville, Florida, on February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-003221;

122)    Jewelry owned by Cesario seized from 3305 Snidow Court, Plano, Texas, on February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-003222;

123)    Artwork owned by Cooper seized from 700 Garden Court, Southlake, Texas, on February 23, 2016, currently in the possession of the FBI, CATS 16-FBI-002932;

124)    3.75 units of working interest in the Bend Arch Lion 1B joint venture, International Western Oil Corporation and any distributions, owned by Cesario;

125)    3.75 units of working interest in the Bend Arch Lion 1B joint venture, International Western Oil Corporation and any distributions, owned by Cooper;

126)    0.50 units of the working interest in Woodford Horizontal Project #5 – AmeriTex Petroleum, LLC, owned by Cesario; and

127)    Two class B units in Woodford Horizontal Project #6, LLC – AmeriTex Petroleum, LLC, owned by Cesario.

59.    The above-referenced property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

## Substitute Assets

60.    Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-described property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described property subject to forfeiture.

A TRUE BILL.

FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8604
Facsimile:  214-659-8802
douglas.brasher@usdoj.gov

**Superseding Indictment – Page 34**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

RICHARD ROBERT CESARIO (01)
JOHN PAUL COOPER (02)
WALTER NEIL SIMMONS (03)
WILLIAM F. ELDER-QUINTANA (04)
JEFFREY EUGENE FULLER (05)
ANDREW JOSEPH BAUMILLER (06)
JEFFRY DOBBS COCKERELL (07)
STEVEN BERNARD KUPER (08)
RAVI MORISETTY (09)
JOE LARRY STRAW (10)
LUIS RAFAEL RIOS (11)
MICHAEL JOHN KISELAK (12)

SUPERSEDING INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud

42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remunerations

42 U.S.C. § 1320a-7b(b)(1)
Receipt of Illegal Remuneration

18 U.S.C. § 982(a)(7))
Forfeiture Notice

35 Counts

A true bill rendered

-----------------------------------------------------------------------------------------------------

DALLAS                                                                          FOREPERSON

Filed in open court this 4th day of October, 2016.

-----------------------------------------------------------------------------------------------------

**Warrant to be Issued to – WALTER NEIL SIMMONS (03), WILLIAM F. ELDER-QUINTANA (04), JEFFREY EUGENE FULLER (05), ANDREW JOSEPH BAUMULLER (06), JEFFRY DOBBS COCKERELL (07), STEVEN BERNARD KUPER (08), RAVI MORISETTY (09), JOE LARRY STRAW (10), LUIS RAFAEL RIOS (11), MICHAEL JOHN KISELAK (12)**

-----------------------------------------------------------------------------------------------------

UNITED STATES DISTRICT JUDGE
Criminal Case Pending:  3:16-CR-060-M